DANIEL F. FAST *et al.*

*v.*

SUSAN M. McPHERSON.

*Filed at Springfield May 13, 1881—Rehearing denied June Term, 1881.*

1. TRUSTS AND TRUSTEES—*a trust made to defraud creditors, not enforced.* A secret trust in real estate, resting upon an agreement made to hinder and delay creditors, will not be enforced.

2. A party taking a conveyance of real estate in trust for another from a prior trustee, who, by an instrument in writing, admits his taking in trust,

as well as by his answer to a bill to enforce the trust, will not be allowed to show in defence that the prior trustee held the property under a contract to defraud the creditors of the husband of the *cestui que trust.* That trust was terminated on the conveyance to the second trustee, and there being nothing on the face of his declaration of the trust having reference to any unlawful purpose, a court of equity will compel him to execute it.

3. SAME—*holder of legal title may admit he holds in trust.* It is competent for a party, after the legal title to real estate has been vested in him, to make a written declaration that he holds such title in trust for another.

4. SAME—*chargeable with notice of who is the beneficiary.* A party receiving a conveyance of lands without any consideration, executed a declaration of trust, in which the name of the *cestui que trust* was left blank. He also received money in trust upon checks payable to the *cestui que trust,* and also money on notes, and the agent of the beneficiary collected all the rents of the real estate: *Held,* that these facts were sufficient notice to the trustee of the person who was the beneficiary.

5. SAME—*held to notice of what circumstances show.* Where a person accepts the position of trustee, he must know that the same requires care, circumspection and fidelity, and he will not be heard to say he did not know that which he could have known by the exercise of ordinary diligence. That which is sufficient to put him on inquiry, is notice of what such inquiry would have developed.

6. SAME—*agent can not release.* An agent of a *cestui que trust* has no power to release a trustee from his duty; and when such agent surrenders to the trustee his declaration of trust, and procures him to convey a part of the trust estate without any authority, such acts will not, in any way, affect the equitable rights of the *cestui que trust.*

7. PAROL EVIDENCE—*to show name intended for blank.* Parol evidence is competent to show the person whose name should have been inserted in a blank in a declaration of trust, as to the name of the *cestui que trust.*

8. FRAUDULENT CONVEYANCE—*who may avoid.* A party can not defeat his own deed acknowledging that he holds property in trust for another, by showing that the title was held, before he received it, to defraud the creditors of the husband of the *cestui que trust.* The declaration of trust would be valid as between the parties, even though it might be fraudulent as to creditors.

9. PURCHASER—*trustee disqualified from dealing with trust property.* A trustee is disqualified from dealing with the trust property to the prejudice of the *cestui que trust.* Before undertaking to acquire rights in it, he must know for whom he is acting. He can not acquire any rights in the property adverse to the *cestui que trust,* by dealing with his agent without the knowledge of the *cestui que trust.*

32—98 ILL.

10. SAME—*when not protected.* Persons who take a mortgage from one holding the legal title to land in trust for another, to indemnify themselves against future loss as sureties of the mortgagor, do not occupy the position of innocent purchasers for value paid. They stand simply in the shoes of the mortgagor, and take no better title than he had.

11. ERROR—*error in favor of appellant will not bar him from availing of error against him.* An appellant in a chancery suit, against whom the court has ruled erroneously, will not be barred of a right to a reversal by an error of the court in the admission of evidence in his favor, especially when, if such evidence had been excluded he might have supplied the same by other proof.

APPEAL from the Circuit Court of Livingston county; the Hon. FRANKLIN BLADES, Judge, presiding.

Mr. H. B. HURD, for the appellants:

When a conveyance is made to defraud creditors, a court of equity will refuse to interpose, in any way, to aid the party intending to defraud creditors, but will leave him in the position he has placed himself. *Dunaway* v. *Robertson,* 95 Ill. 419.

To render a deed fraudulent, it need not be made to avoid the payment of liabilities. It is enough if it is intended to, in anywise, hinder or delay them. *Phelps* v. *Curts,* 80 Ill. 109; *Quarles* v. *Kerr,* 14 Gratt. 48; *Wheldon* v. *Wilson,* 44 Me. 1; *Borland* v. *Mayo,* 8 Ala. 104; Bump on Fraudulent Conveyances, 19–20.

The appellee held Whiteside, or allowed him to appear as the owner of, or as having full power of disposition over, the property, and innocent parties dealing with such apparent owner will be protected. *Anderson* v. *Armstead,* 69 Ill. 452; *Dunning* v. *Balkrech,* 41 id. 425.

Where one of two persons must suffer loss, he who by his negligent conduct made it possible for the loss to occur must bear it. *Anderson* v. *Warne,* 71 Ill. 20; *Pursley* v. *Forth et al.* 82 id. 327; *Gavagan* v. *Bryant et al.* 83 id. 376.

The rule in reference to constructive notice does not impose upon the purchaser the necessity of searching for all possible contingencies,—reasonable and ordinary diligence is

all that is required. When Hurd and Bates found the title of record in Fast, and Fast's tenants in possession, and that they claimed no rights beyond a tenancy for a year, that was as far as they were required to go. *City of Chicago* v. *Witt*, 75 Ill. 211; *Beatie* v. *Butler*, 21 Mo. 321; Wade on Law of Notice, 121; *Wright* v. *Wood*, 23 Pa. St. 120; *Flagg* v. *Mann et al.* 2 Sumner, 557; *Bank of Montreal* v. *De War*, 6 Bradw. 294; 2 Sugden, 293.

Messrs. JUDD & WHITEHOUSE, for the appellee:

Where there is any written evidence showing that the person apparently entitled is not really so, parol evidence may be admitted to show the trust under which he actually holds the estate. *Kingsbury* v. *Burnside et al.* 58 Ill. 310.

As to the jurisdiction of equity to enforce trusts, see *Steele et al.* v. *Clark*, 77 Ill. 471; 1 Greenl. Cruise on Real Prop. 396, and note.

To make a purchaser of a legal title a trustee for the *cestui que trust*, it is not necessary that he should have notice of the particular *cestui que trust*. He must inquire and search out the *cestui que trust*. *Maples* v. *Medlin et al.* 1 Murphy, (N. C.) 219.

If a subsequent purchaser acts in bad faith, and willfully and negligently shuts his eyes against those lights which, with proper observation, would lead him to a knowledge of facts affecting the subject of his purchase, he will be held to have notice of such facts. *Chicago, Rock Island and Pacific Railroad Co. et al.* v. *Kennedy et al.* 70 Ill. 350.

Whatever puts a party upon inquiry, amounts, in judgment of law, to notice, provided the inquiry becomes a duty, as in the case of purchasers and creditors, and would lead to a knowledge of facts by the exercise of ordinary diligence and understanding. *Harper et al.* v. *Healy et al.* 56 Ill. 179; *Henneberry* v. *Morse et al.* id. 394.

Whatever is notice enough to excite attention, and put a party on his guard and call for inquiry, is notice of every-

thing to which such inquiry might have led, and every unusual circumstance is a ground for suspicion, and prescribes inquiry. *Russell et al.* v. *Ranson,* 76 Ill. 167.

It is common doctrine that what is sufficient to put a purchaser upon inquiry, is good notice of whatever the inquiry would have disclosed. *Watt* v. *Scofield,* 76 Ill. 261.

It will, in general, be presumed that every purchaser has investigated his " vendor's title " before completing his purchase, and if the title can not be made out but through a deed which gives or leads to notice of a trust, he will be assumed to have notice of that trust, unless, indeed, he can show why he had not inquired into the title with a view to his protection. And if the deed which carries notice of the trust be found in the possession of the purchaser, that will, *prima facie,* be sufficient to fix him with notice. Hill on Trustees, 801.

Fast, in dealing with Whiteside, was dealing with the agent and trustee of Mrs. McPherson, and Hurd and Bates, in dealing with Fast, were also dealing with a trustee of Mrs. McPherson. By the least exertion, he or they could have learned the whole truth of the matter, and the facts would have led to notice. *McConnell* v. *Reed,* 4 Scam. 117.

That possession of land is notice of the possessor's title, see *McConnell* v. *Reed, supra; Davis* v. *Earley,* 13 Ill. 192; *Turney* v. *Chamberlain,* 15 id. 271 ; *Wilson* v. *Byers et al.* 77 id. 77; Hill on Trustees, 798, 802; Tiffany & Bullard on Trusts, 821, and cases cited.

A trustee can not claim adversely, or derive any benefit to the prejudice of the *cestui que trust.* *O'Halloran* v. *Fitzgerald,* 71 Ill. 54; *Gilman, Clinton and Springfield Railroad Co.* v. *Kelly et al.* 77 id. 434.

Hurd and Bates, in taking a mortgage to indemnify themselves as sureties of Fast, are not innocent purchasers. They do not stand even in the relation of purchasers. They are mere volunteers, not having paid consideration to the amount of a penny for their deed.

There can be no innocent purchaser when no payment is made; and this is the law even as against latent equities or interests in real estate. A party holding land under a recorded deed, to defend his title against a claimant under a previous unrecorded equitable title, must show that he has an equitable as well as the legal title; and this must be sustained by proofs that he purchased the land in good faith, and actually paid for it before notice of the previous equitable title or interest. It is not sufficient that he may have secured the payment of the purchase money. *Brown et al.* v. *Welsh,* 18 Ill. 343; *Worden et al.* v. *Williams,* 24 id. 67; *Storey* v. *Windsor,* 2 Atk. 630; *Bassett* v. *Nasworthy,* 2d vol. Pt. 1; Leading Eq. Cases, 61, *et seq.* notes of Hare & Wallace; 1 Story's Eq. Jur. 76.

Mr. A. E. GUILD, also for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The bill, in the present case, alleges that appellee was the equitable owner of certain lands, therein specifically described, located in Livingston county; that Wirt Dexter, Esq., in the first instance, held the legal title thereof for her, but subsequently, at the request of her agent, Thomas C. Whiteside, Dexter conveyed the same to one Daniel F. Fast; that Fast took the legal title in trust for her, executing and delivering to her agent, Whiteside, the following declaration of trust:

" Whereas, the premises hereinafter described were conveyed to me by deed dated March 9th, A. D. 1876; now, therefore:

" Know all men by these presents, that I, Daniel F. Fast, of the city of Chicago, in the county of Cook, and State of Illinois, hereby certify that I hold the premises hereinafter described, in trust for ——— ———, of the city of Chicago, in the county of Cook, and State of Illinois, sub-

ject to the legal charges on the same, and all expenses and costs accrued and to accrue. (The premises are then here described).

"Dated 9th day of March, 1876.

Signed,                    DANIEL F. FAST. [SEAL.]"

Acknowledged before Henry V. Smith, Notary Public, March 9, 1876.

It is alleged that Fast took the title, in trust, for appellee, and paid no consideration whatever for the land.

It is also alleged, that it was subsequently discovered that there was some mistake in the description of the property intended to be conveyed in Dexter's deed, and that upon such discovery he executed a quitclaim deed to Fast, to correct that mistake, but that such corrected deed conveyed the property only subject to the same trust to which it was intended to be subject by the former deed; that Fast has been requested to convey to appellee, but refuses to do so, and denies his trust.

The prayer of the bill is, that Fast may be decreed to hold as trustee for appellee, and convey the property to her.

The answer of Fast admits the conveyance by Dexter, and the execution of the declaration of trust set out in the bill; but alleges, that at the time of the execution of the same nothing was said about filling the blank, or as to who was interested in the premises, and that no intimation was given to defendant on that subject, and he denies that he had any knowledge that appellee claimed to be the *cestui que trust*. He then sets up that appellee's agent, Whiteside, desiring a loan on his own account, on the 14th of May, 1877, proposed that if he (Fast) would loan him $2000 on thirty days' time, he would surrender the declaration of trust to him, and he might hold the premises in controversy, together with certain other designated property, as security for the $2000; that thereupon he did loan Whiteside the $2000, taking his note for the same; that he also made certain

other loans, and incurred certain debts, specifically named, to and for Whiteside, for all which Whiteside agreed he should hold the premises in controversy as security.

The answer further alleges, that Fast conveyed the property to Hurd and Bates, as security for their being sureties on his bond as guardian for his minor son.

And it is also further alleged, that until after the accruing of the rights of Fast, in the way alleged, he always supposed the property belonged to Whiteside, and it is charged that if Dexter held the property in trust for appellee, it was upon a corrupt and unlawful agreement, and for the purpose of hindering and defrauding the creditors of the estate of the husband of appellee, which had the only equity or interest in the premises, and was indebted to creditors to the amount of $50,000, and upwards, and that the property was so held for the purpose of enabling her to, unlawfully, and against the rights of creditors, avail herself of the profits thereof, etc.

If appellee were seeking to enforce a secret trust in this property, resting upon an agreement made to hinder and delay creditors, it is quite clear that she would not be entitled to recover. But she is seeking to enforce no such agreement. Here, Fast admits in his answer that he holds the property in trust, as declared by an instrument in writing, executed and acknowledged by himself. Upon its face this instrument has no reference to any unlawful purpose. It is not essential to its enforcement that appellee should allege or prove that its execution is in anywise, either directly or indirectly, connected with an unlawful or fraudulent purpose. How Mr. Dexter held the property before he conveyed to Fast, is not of the slightest consequence. That trust has been fully executed, and that is an end of it,—and since then Fast has, in regard to the same property, made an express declaration of trust, and has admitted that fact in his answer. It was competent to make such declaration after the legal title had vested in him. *Kingsbury* v. *Burnside*, 58 Ill. 310. And it was competent to prove, by

parol, that the blank should have been filled with the name of appellee. *Railroad Co.* v. *Durant*, 95 U. S. (5 Otto) 576; *Duncan* v. *Jandon*, 15 Wallace, 165; *Ashhurst* v. *Given*, 5 W. & S. 329; Perry on Trusts, 329, note 6.

But Fast, to defeat his own deed in declaring the trust, sets up that the title was held, before he received it, to defraud the creditors of the estate of appellee's husband. Suppose this were true,—he is not one of those creditors. He occupies no confidential relations towards them, authorizing or requiring him to protect their interests. Presumably they can and will attend to their rights in this regard themselves, and even if, as to them, this declaration of trust is fraudulent, it is valid as between the parties. *Lyon* v. *Robbins*, 46 Ill. 276; *Horner* v. *Zimmerman*, 45 id. 14; *Finley* v. *McConnell*, 60 id. 259; *Fitzgerald* v. *Forristal*, 48 id. 228.

The same principle which would have precluded appellee from alleging that a deed absolute on its face, and unaccompanied or followed by an express declaration of trust, was, in fact, held in secret trust so as to defeat or delay creditors, etc., precludes Fast from alleging, as an excuse for his breach of trust, that he executed the declaration of trust in order that creditors might be defeated or delayed, etc. Neither party is allowed to base a right upon an allegation of her or his own participation in the doing of an unlawful or fraudulent act. *St. Louis, Jacksonville and Chicago Railroad Co.* v. *Mathers*, 71 Ill. 592; *Compton* v. *The Bunker Hill Bank et al.* 96 id. 301.

All evidence, therefore, in regard to how appellee obtained her interest in the land, and why the title was taken by Mr. Dexter, and by him transferred to Fast, we regard as having been improperly admitted.

Fast, being trustee of the property, was disqualified to deal with it to the prejudice of his *cestui que trust*. Before he undertook to acquire rights in it, the burden was upon him to know for whom he was acting. Says Perry, in his work on Trusts, § 195, latter part of the section: "The *cestui que*

*trust* must know that he is dealing with the trustee. There-
fore, if the trustee purchases through an àgent or third
person, and the *cestui que trust* does not know the trustee in
the transaction, the contract will be void, or a trust in the
agent." See, also, Hill on Trustees, (4th Am. ed.) 246,—
*158.

Fast has no sufficient excuse, here, for not knowing that
he was trustee for appellee.

The preponderance of evidence shows that, when asked to
take this title, he was notified by Whiteside that he (W) was
about to come into the control of some lands and money,—
quite a large amount,—and that he (W) wished to put "both
the money and the lands in his (F's) care." This, it is true,
is denied by Fast, but it is testified to by both Whiteside, and
by Hunter, who was a clerk in Whiteside's office at the time
of this transaction. The amount of the money was $12,000.
Fast was also informed by Whiteside, that he (W) should
want to borrow $3000 of this money. He did borrow it,
gave his note for it, and secured the note by trust deed on
his own real estate. Now, this was all utterly inconsistent
with any idea of ownership in Whiteside, and Fast should
have known it, and would have done so had he paused
(which he never seems to have done) to reflect about the
character of the transaction.

The deed, as has been seen, came from Mr. Dexter. The
money was paid by Mr. Dexter's check, payable to appellee,
and indorsed in blank by her. Of this money, J. D. Easter
& Co., of whom Fast was a member, got $9000, and gave
their note, in connection with the Marsh Harvester Co., for
its payment. Fast got the remaining $3000, and gave his
individual note, secured by property of some kind. These
notes were taken up by Fast, but, before they were taken up,
they were indorsed by appellee. Fast received no rent from
the property, but the rent was all the time received and
accounted for to appellee. She had, during the time, an
agent in possession, looking after the property for her, and

although he used Fast's name in making the lease, he accounted for the rents to Whiteside, as appellee's agent.

There was, on the part of Fast, inexcusable negligence in not knowing whom he represented. When he accepted the position of trustee, he must be held to have known that his position was one requiring care, circumspection and fidelity, and he can not be now heard to say that he did not know that which he must have known if he had exercised ordinary diligence in trying to find out.

If the circumstances did not sufficiently point out appellee, he knew that everything came from Mr. Dexter, and necessarily that Mr. Dexter could inform him to whom the property belonged. Whiteside, also, he must have known, could, and doubtless would, have told him; but he did not even ask him for information in that regard. From the circumstances, he ought to have known that the property did not belong to Whiteside, and yet he proceeded to deal with Whiteside as if he were owner, shutting his eyes to every avenue of knowledge in regard to the ownership of the property.

There was a subsequent quitclaim deed made by Fast to Nix, by request of Whiteside, and before incurring the indebtedness as security, for which Fast seeks to hold the property, Whiteside returned this and the declaration of trust to Fast. The making of this quitclaim, and the return of the declaration of trust, were entirely unauthorized. They did not, in any way, affect appellee's equities. Fast, being chargeable with knowing that his trust was for appellee, must be held to also know that her agent could not release him from his duty as trustee by parol, and that, too, for the purpose of using the property as security for his own individual indebtedness. Besides, no writing is shown authorizing Whiteside to convey real estate, etc., for her, nor is it pretended that he ever executed an instrument in writing affecting this property.

Hurd and Bates, claiming only as mortgagees, to indemnify themselves against future possible loss in being Fast's sureties as guardian, do not occupy the position of innocent purchasers for value paid. *Brown et al.* v. *Welch*, 18 Ill. 343; *Keys, Impl.* v. *Test*, 33 id. 316; *Roseman* v. *Miller*, 84 id. 297. They stand simply in Fast's shoes, and take no better title than he had.

The cross-error is not well assigned. Although the tax receipts may not have been sufficiently proved, there was other evidence which fully showed the payment of the tax, namely, the admission of Whiteside, whose authority in that regard was ample.

We should not, in any event, undertake, finally, to adjudicate that question here. If the court erred in admitting the evidence, appellants ought not to be foreclosed by that error, for, had the court, on the hearing, have held the evidence offered insufficient, they might have supplemented it by other sufficient evidence. But until the court thus held, they might rest on the evidence offered.

In all respects, we think the decree below right, and it will, therefore, be affirmed.

*Decree affirmed.*